COMM'RS OF POTTAWATOMIE COUNTY V. P. O'SULLIVAN.

1. HIGHWAY; *Damages of Land-Owner.* In the appropriation of the right of way for a public road, the public has a right, in the absence of any special statutory or constitutional restrictions, to reduce the damages to be awarded to the land-owner, by the amount of the benefits which inure to him as the direct and special result of the proposed road, but not by any which he receives in common with the rest of the public. In Kansas, this right has not been restricted by statute or constitution.

2. CONSTITUTION; *Construction of Sec. 4 of Art. 12.* Section 4 of article 12 of the constitution, which provides that "no right of way shall be appropriated to the use of any corporation until full compensation therefor be first made, irrespective of any benefit from any improvement proposed by such corporation," applies only to canals, railroads, and other similar cases in which some corporation takes a use or benefit in the proposed way other than the use and benefit enjoyed by the public.

*Error from Pottawatomie District Court.*

IN November 1873, upon proper petition and by proper proceedings, a highway was laid out over and across the lands and improvements of *O'Sullivan.* *O'Sullivan* duly presented to the road-viewers his written application for damages, claiming "for 1½ acres of land under cultivation, $45; for removal and destruction of 140 rods of rail fence, $70: total, $115." The viewers allowed *O'Sullivan* $12 as damages, and their report and such allowance were thereafter confirmed by the *Board of County Commissioners.* From such allowance for damages, *O'Sullivan* appealed to the district court, where a trial was had at the February Term 1874, without a jury. The court found—

"That there is due from the defendants to the plaintiff the sum of seventy-four dollars; and the court further finds, as a construction of law, that no advantage accruing to the plaintiff in consequence of the laying-out and opening said road through the plaintiff's land can be deducted from the damages sustained by the plaintiff in the value of the land taken by the road, or the cost of removing and resetting his fence."

Defendants excepted to these findings. Judgment for the plaintiff for $74, and costs, and defendants bring the case here on error.

J. T. *Brown*, for plaintiffs in error.

J. A. *Beal*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The question presented in this case is as to the measure of damages on the laying-out of a public road. The court permitted the land-owner to show the value of the land taken, and the cost of removing a fence, whose removal was necessitated by the opening of the road. This was right, and no objection can be raised thereto. But the court refused to permit the county to show what benefits accrued to the land of claimant from the opening of the road; and of this the plaintiff in error complains. The question was presented to the court in two or three different ways, and the ruling of the court was direct and positive, that no benefits resulting from the road could be set off against the damages. Was this error? Outside of any special constitutional or statu-

1. Damages for lands appropriated for highways.

tory restrictions, the right of the state to take private property for public use, and the corresponding right of the individual to receive compensation for the property thus taken, may be assumed. We know that the existence of this right to compensation is denied; but we shall assume in this case that it exists. But this compensation is secured if the individual receive an amount which, with the direct benefits accruing, will equal the loss sustained by the appropriation. We of course exclude the indirect and general benefits which result to the public as a whole, and therefore to the individual as one of the public; for he pays in taxation for his share of such general benefits. But if the proposed road or other improvement inure to the direct and special benefit of the individual out of whose property a part is taken, he receives something which none else of the public receive, and it is just that this

should be taken into account in determining what is compensation. Otherwise, he is favored above the rest, and instead of simply being made whole, he profits by the appropriation, and the taxes of the others must be increased for his special advantage. Upon general principles then, and with due regard to right and justice, it should be held, that the public may show what direct and special benefits accrue to an individual claiming road damages, and that these special benefits should be applied to the reduction of the damages otherwise shown to have been sustained. *State v. Blanvelt*, 34 N. J. 263. There is nothing in the statute to alter or restrict the rule thus founded on the general principles of right and justice — nothing to indicate what matters are to be taken into account, and what omitted, in ascertaining the compensation to which the land-owner shall be entitled. Its language is, "Said viewers shall also assess and determine the amount of damages sustained by any person or persons through whose premises the said road is proposed to be established." Gen. Stat. 899, § 5; Laws 1872, p. 353, § 3; Laws 1874, p. 166, § 5. The word "damages" is of general import, and is equivalent to compensation. It includes more than the mere value of the property taken, for often the main injury is not in the value of the property absolutely lost to the owner, but in the effect upon the balance of his property of the cutting out of the part taken. He is damaged therefore, more than in the value of that which is taken. Conversely, the appropriation of the part taken to the new uses for which it is taken may operate to the direct and special improvement and benefit of that not taken. Surely, this direct increase in value, this special benefit resulting from the improvement the public is making, and for which it must be taxed, reduces the damages he has sustained. Nor does the constitution change the rule. Art. 12, § 4, provides that, "No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made, * * * irrespective of any benefit from any improvement proposed by such corporation." This has been construed by many as apply-

2. Constitution construed.

ing to the opening of public roads. Such seems to have been the view of the learned justice of the U. S. circuit court for this circuit. *Eidemiller v. Wyandotte City*, 2 Dillon, 376. But we are constrained to think this is a mistake. The section is in an article on corporations. True, one section, § 5, refers to municipal corporations proper, "cities, towns, and villages;" and the manifest scope of the article is limited to private corporations, and municipal corporations proper. *Beach v. Leahy*, 11 Kas. 23. Another article is devoted to county and township organizations. (Art. 9.) But chiefly, the language of the section itself seems to exclude public highways. "No right of way shall be appropriated to the use of any *corporation*." But a public road is not for the use of a "corporation;" it is for the use of the *public*. Its use is not limited to any one, nor especially designed for any one. No individual, no corporation, private or municipal, has any special use or benefit from it. It is free to all, and all have equal rights in it. Certain ways are appropriated to the use of corporations, such as turnpike roads, railroads, canals, etc. In these the corporation owners have a special use, and derive a special benefit. The rights of the public are limited, and subordinate to the rights of the corporation. In a true and natural sense of the language, the way is appropriated to the use of the corporation. Again, the compensation is to be made "irrespective of any benefit from any improvement proposed by such corporation." But in a public road no corporation is proposing an "improvement." No corporation has any necessary connection with the road. True, the ordinary proceedings for the opening of roads are had before the county commissioners, but this is not necessarily nor always so. Section lines are often by direct legislative enactments declared highways. Commissioners are also often appointed by the legislature to lay out highways. And the functions of the county commissioners may as well, so far as any question of power is concerned, be committed to any other body or officer. They are simply a part of the machinery which the legislature has in its wisdom provided for opening and securing to

the public the use of all necessary highways. In short, there is no element of corporation use or interference in public roads. And the section is limited to those cases in which some corporation takes a use or benefit in the proposed way, as distinguished from the use and benefit enjoyed by the public. In some states the constitutional provision concerning the appropriation of land for public uses explicitly mentions and includes public roads. Const. of Iowa, 1857, art. 1, § 18. Of course therefore, in that state, the general rule as heretofore stated is thus limited; but where, as with us, there is no special constitutional or statutory restriction, the general rule applies.

The judgment of the district court will therefore be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.